# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KENNETH ELI EDWARD McLEAN,<br><br>Defendant. | CR 25-37-GF-WWM<br><br>ORDER ON JOINT MOTION FOR LEAVE TO SEEK AN INTERVIEW WITH THE JURY FOREPERSON |

The Defendant was tried before a jury on the Superseding Indictment beginning on February 17, 2026. The jury could not reach a verdict on either count or a lesser-included offense for Count II. On February 24th, the Court established April 20, 2026 as the new trial date. On February 26th, the United States and Defendant McLean jointly moved for leave to pose three questions to the foreperson of the discharged jury,[1] who they believe "can provide valuable insight that will inform the United States and the defendant as to whether retrial is likely to result in conviction or acquittal." (Doc. 93; 93-2). The parties submitted proposed

---

[1] In the proposed order lodged by the parties, it is asserted that Ninth Circuit caselaw precludes the parties from interviewing jurors other than the foreperson. No citation for this assertion is provided in either the Motion or the proposed order. The Court's research on this question has not revealed Ninth Circuit precedent on this point. In order to conform the relief requested to the relief granted, the Court's Order authorizes the parties to interact with the jury foreperson. One should not infer from the scope of the relief that interviews with other jurors are precluded by operation of law.

questions with their Motion. (Doc. 93-2). In an Affidavit supporting the Motion, the prosecutor asserted that "the government anticipates retrying the defendant unless it is determined that re-trial is likely to result in a no more favorable verdict." (Doc. 93-1). She avers that answers to their proposed questions "may better inform the government's decisions moving forward." *Id.* The parties cite to Local Criminal Rule 24.2 as the authority for the Motion and have complied with the requirements of the rule. *Id.* The interview request is limited to the jury foreperson, not the other jurors or the alternate juror.

## Analysis

The Motion raises a number of issues, including whether the Court has discretion under the Local Criminal Rule or other applicable authority to allow counsel to ask the jury foreperson questions and, if so, what the questions should be.

I.    The Local Rule does not provide authority for a juror interview on the facts of this case, but the Motion may be considered under Federal Rule of Criminal Procedure 47.

Local Criminal Rule 24.2(b) includes the following subsection:

(1)    Unless a different time applies under Fed. R. Crim. P. 33(b)(1) or a judge's order, neither parties nor counsel may interview jurors unless, within 14 days after the jury returns its verdict, a party files:

(A)    proposed written questions to be asked of the jurors;

(B)    an affidavit showing good cause; and,

(C)    if granted leave, a second affidavit showing the results.

The plain language of the local rule makes it inapplicable to cases in which the jury does not render a verdict. The rule allows a party to seek leave within 14 days after a jury returns a verdict. By limiting the reach of the rule to those cases in which juries have returned a verdict, it cannot apply to the trial convened and completed in this case during the week of February 17, 2026. The jury could not reach a verdict on either count in the Superseding Indictment, resulting in a hung jury. "[T]he fact that a jury hangs is evidence of nothing—other than, of course, that it has failed to decide anything." *Yaeger v. United States*, 557 U.S. 110, 124-25 (2009) ("hung counts have never been accorded respect as a matter of law or history, and are not similar to jury verdicts in any relevant sense"); *accord State v. Breest*, 155 A.3d 541, 549 (N.H. S. Ct. 2017) ("a hung jury cannot be considered a verdict") (citing to Black's Law Dictionary 987 (10th ed. 2014) ("jury that cannot reach a verdict by the required voting margin")).[2]

---

[2] The definition of "hung jury" from the 10th edition of Black's Law Dictionary is identical to the most recent 12th edition, published in 2024. HUNG JURY, Black's Law Dictionary (12th ed. 2024).

3

The Motion, accompanied by the Affidavit, is proper under Federal Rule of Criminal Procedure 47.

II.    Post-trial interviews of jurors should not be authorized if they might undermine the jury's deliberative process or impact the jury system.

Many courts have ruled on whether jurors may be interviewed after completion of jury service by the lawyers who tried the case before them.  Ninth Circuit case law grants district courts "discretion regarding whether to grant lawyers permission to conduct jury interviews." *Mitchell v. United States*, 958 F.3d 775, 787 (9th Cir. 2020) ("[r]ules restricting lawyers' access to jurors '(1) encourage freedom of discussion in the jury room; (2) reduce the number of meritless post-trial motions; (3) increase the finality of verdicts; and (4) further *Federal Rule of Evidence 606(b)* by protecting jurors from harassment and the jury system from post-verdict scrutiny'") (quoting *Cuevas v. United States*, 317 F.3d 751, 753 (7th Cir. 2003)) (emphasis in original).  As Justice Thomas recognized, discouraging post-verdict interviews serves to protect the integrity of the jury system:  "[a]llowing such postverdict inquiries would seriously disrupt the finality of the process [and] would also undermine full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decision of laypeople." *Pena-Rodriguez v. Colorado*, 580 U.S. 206, 242 (2017) (Thomas, J., dissenting) (internal citations and quotations

4

omitted).  In exercising this discretion, the Court must be mindful of "the important purpose of such limitations in providing jurors 'some protection when they return to their daily affairs after the verdict has been entered.'"  *Mitchell*, 958 F.3d at 790 (quoting *Pena-Rodriguez*, 580 U.S. at 226).  Cases from the Ninth Circuit also suggest that juror interviews should be conducted sparingly, to protect a jury's verdict and to "promote full and candid jury deliberations," and in a manner that does not harass jurors.  *Mitchell*, 958 F.3d at 787 (explaining that post-verdict juror interviews are generally discouraged by the Ninth Circuit absent a showing of good cause); *Pena-Rodriguez*, 580 U.S. at 218.

It is important to note at the outset that case law on whether jurors may be interviewed by parties after they have been discharged is focused on the post-verdict context.  *Mitchell*, 958 F.3d at 787; *Traver v. Meshriy*, 627 F.2d 934, 941 (9th Cir. 1980); *Northern Pac. Ry. v. Mely*, 219 F.2d 199, 201 (9th Cir. 1954).  Concerns about post-verdict interviews of jurors in these cases are distinguishable from cases in which the jurors could not reach a verdict.  A number of the reasons articulated by courts which have precluded post-verdict interactions with jurors have less force or are not relevant here.  For example, with a hung jury, there is no risk that a party may attempt to impeach a verdict with information gleaned from an interview with a juror.  Similarly, concerns that interviews with jurors could

5

create risk regarding the certainty and finality of a jury's verdict are not at issue here. In the Affidavit supporting the Motion, the United States notes that a conversation between counsel for the parties and the foreperson could not result in a challenge to a verdict because the jury did not return a verdict. At the same time, for courts concerned that interrogation of jurors after completion of jury service by the lawyers for the parties could impact jury pools by making potential jury service less appealing, there may be little distinction between those jurors who reached a verdict and those who were unable to. *Stein v. New York*, 346 U.S. 156, 178 (1952) (risks with "any public or private post-trial inquisition of jurors as to how they reasoned, lest it operate to intimidate, beset, and harass them").

The briefing reveals no Ninth Circuit authority on limitations imposed on district courts with respect to authorization of interviews of jurors after those same jurors failed to reach a verdict, and the Court has been unable to locate binding precedent on the question. Criminal trials in which jurors could not reach a unanimous verdict present an appropriate context for post-trial interactions with jurors. In such a circumstance, the United States must decide whether to re-try the defendant. Based upon the representations in the Affidavit, the Court finds good cause for allowing an interview of the jury foreperson if it might avoid futile prosecution efforts. *See Gomez v. Shinn*, 587 F. Supp. 3d 939, 944 (D. Ariz. 2022)

6

(a requirement that good cause be shown before contacting a juror protects the jury from "post-verdict misconduct and the courts from time-consuming and futile proceedings . . . increasing the certainty of verdicts" (internal quotations omitted)). After considering the interests articulated by the parties and balancing them with the risks recognized with post-trial jury interviews, there is good cause to grant the Motion. By ensuring that the jury foreperson is reminded that she need not answer the questions to be posed by the parties, this Order should not give others pause about the prospect of serving on a jury and being subjected to demands after being discharged.

III.    The scope of the questions to be offered must be limited.

The parties submitted their proposed questions for the jury foreperson to the Court, which read as follows:

1.    Are you willing to discuss the case and your deliberations with me? If not, thank the juror for his/her time and terminate the call.

2.    On the each count of the superseding indictment, what was the split between those voting to convict and those voting to acquit the defendant?

3.    If there was not a specific split, what was the general split between those voting to convict and those voting to acquit the defendant?

(Doc. 93-2 at 2). The proposed order would have this Court find that the "questions that the parties submitted with their motion appear likely to solicit

7

broad answers about the jury's conclusions rather than information about the jurors' thought processes or the course of deliberation." *Id.* at 2.

The Court is concerned that the proposed questions may lead to comments on the jury's deliberations instead of observations about the evidence presented. The Ninth Circuit has expressly "condemned the practice of interviewing jurors on the course of their deliberations in the jury room." *Bryson v. United States*, 238 F.2d 657, 665 (9th Cir. 1956); *Smith v. Cupp*, 457 F.2d 1098, 1100 (9th Cir. 1972) ("it is improper and unethical for lawyers to interview jurors to discover what was the course of deliberation of a trial jury.") (citing *Northern Pac.*, 219 F.2d at 202); *Guam v. Marquez*, 963 F.2d 1311, 1315 (9th Cir. 1992). The first question that the parties propose appears problematic, in part, given Ninth Circuit precedent. Affirmative responses by the jury foreperson to the first question ("Are you willing to discuss the case and your deliberations with me?") would likely provide illumination on the jury's deliberations. Such discussions with jurors disfavored, if not precluded, in the Ninth Circuit. The second and third questions proposed by the parties seek information on the vote tally. A final vote by the jury may be construed as an act after the conclusion of deliberations. Therefore, the Court has modified the questions to be posed. Accordingly,

8

**IT IS HEREBY ORDERED** that the parties' Joint Motion for Leave to

Contact the Jury Foreperson in the February, 2026, trial in this case is GRANTED.

**IT IS FURTHER ORDERED** that the parties shall use the following script

when speaking with the foreperson of the jury:

Hello, Ms. [Juror Last Name], my name is _____ and I am calling with _____ to conduct an interview of the jurors in the *United States of America v. Kenneth Eli Edward McLean* case. At the end of trial, the Judge stated that no attorney would contact you regarding your jury service in this matter without an Order from the Court. The Court has issued an Order authorizing us to contact you. We can provide you a copy of the Order if you wish. You may remember that the Court also told you and your fellow jurors before discharging you that under the Court's Local Criminal Rule 24.2, you are under no obligation to answer any of our questions even if the Judge has authorized us to reach out to you. So, even though he has authorized us to contact you, whether you participate in this interview is completely voluntary. The Judge has authorized us to ask you four questions if you are willing to talk to us. It is your choice if you want to answer some or all of the questions. If you are willing to answer some or all of the questions, we will begin to ask you the questions now. Is it acceptable to you if we ask you the questions approved by the Court? In responding to the questions, please do not disclose how you or any other juror voted on the question of whether the Defendant is guilty or not guilty with respect to either count in the Superseding Indictment. Also, please do not disclose anything about the jury's deliberations in your answers to the questions.

[If no, terminate the call. If yes, proceed to ask the questions, below]

1.    In your view, what were the strengths and weaknesses of (a) the prosecution's case and (b) the Defendant's case?

9

2. Were there facts or information that you wanted, but did not receive as evidence?

3. Of the testimony that you heard and the exhibits that were admitted, what did you consider to be important and why?

4. On the last vote that the jury took, what was the split between those voting to convict and those voting to acquit the Defendant on Count I?  On the last vote that the jury took, what was the split between those voting to convict and those voting to acquit the Defendant on Count II?

**IT IS FURTHER ORDERED** that the parties shall file an affidavit following the contact with the juror, indicating the results.

**IT IS FURTHER ORDERED** that, upon request, the Clerk of Court may supply counsel for each party with the juror's phone number.

The Clerk of Court is directed to notify the parties of the making of this Order.

DATED the 4th day of March, 2026.

_____
WILLIAM W. MERCER
UNITED STATES DISTRICT JUDGE